OPINION
Defendant-appellant, Kenneth Wayne Smith, appeals the decision of the Butler County Court of Common Pleas dismissing his petition for postconviction relief without an evidentiary hearing. We affirm.
On May 12, 1995, appellant and his brother, Raleigh Randall Smith, murdered Lewis Ray and Ruth Ray in their Hamilton home during a robbery. In the interest of brevity, we will not repeat the details of these crimes, previously described on direct appeal to the Supreme Court of Ohio. See State v. Smith (1997),80 Ohio St.3d 89, 90-94. On February 8, 1996, appellant was convicted of two counts of aggravated murder while committing or attempting to commit aggravated robbery. After a sentencing hearing on January 30-31, 1996, the jury recommended the sentence of death for each count of aggravated murder.[1] On February 8, 1996, the trial court imposed the sentence of death for each count of aggravated murder. Upon direct appeal, the Supreme Court of Ohio affirmed the convictions and sentence.[2] Smith at 123. The United States Supreme Court denied appellant's writ of certiorari on May 18, 1998. State v. Smith (1998), U.S.,116 S.Ct. 1811.
On October 14, 1996, appellant filed a petition for postconviction relief pursuant to R.C. 2953.21. The petition was amended on October 23, 1996. On November 4, 1996, the state filed a motion seeking the dismissal of appellant's amended petition. On November 3, 1997, the trial court granted the state's motion and entered findings of fact and conclusions of law. Appellant filed a timely notice of appeal on December 1, 1997. In his appeal, appellant included three assignments of error. On May 6, 1998, appellant withdrew the first assignment of error. The second and third assignments of error are as follows:
Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S POST-CONVICTION PETITION UNDER OHIO REVISED CODE SECTION 2953.21(C).
Assignment of Error No. 3:
 THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S REQUESTS FOR DISCOVERY IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, NINTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 1, 2, 9, 10, 16 AND 20 OF THE OHIO CONSTITUTION.
In the second assignment of error, appellant alleges the trial court erred by dismissing his petition for postconviction relief. Appellant's petition contains eleven separate grounds for relief. Before addressing the merits of these claims, we review Ohio's postconviction relief statute, R.C. 2953.21.
R.C. 2953.21(A)(1) provides that:
 Any person who has been convicted of a criminal offense or adjudged a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.
A petitioner is not automatically entitled to an evidentiary hearing upon filing a petition for postconviction relief. State v. Jackson (1980), 64 Ohio St.2d 107, 110. In determining whether a hearing is warranted, a petitioner bears the initial burden to provide evidence containing sufficient operative facts to demonstrate a cognizable claim of constitutional error. State v. Kapper (1983), 5 Ohio St.3d 36, 37-38, certiorari denied,464 U.S. 856, 104 S.Ct. 174.
In addition, a claim for postconviction relief may be dismissed as res judicata. A claim is res judicata if it was raised or could have been fairly raised at trial, or on direct appeal where defendant had appellate counsel. State v. Cole (1982),2 Ohio St.3d 112, 115. An exception may apply if the petitioner provides "competent, relevant, and material evidence" dehors the record. State v. Smith (1985), 17 Ohio St.3d 98, 101. However, the evidence dehors the record cannot merely repackage similar evidence or issues that could have been raised on direct appeal. State v. Lawson (1995), 103 Ohio App.3d 307, 315. Moreover, the evidence dehors the record must materially forward a constitutional claim of the petitioner. Id. If the new evidence is "marginally significant and does not advance the petitioner's claim beyond a mere hypothesis and a desire for further discovery," res judicata still applies to the claim. Id. Keeping these standards in mind, we address appellant's eleven claims for postconviction relief. In order to analyze similar legal issues together, we address the claims out of order.
The first, seventh, eighth, and ninth claims for relief in the petition allege that appellant's trial counsel provided ineffective assistance. In summary, appellant asserts trial counsel's investigation and presentation of evidence was ineffective and the presentation of expert testimony in the mitigation stage was ineffective. To demonstrate ineffective assistance of counsel, appellant must satisfy a two prong test: (1) show that counsel's representation fell below an objective standard of reasonableness; and (2) show that counsel's actions prejudiced appellant at trial. Strickland v. Washington (1986),466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068. Prejudice means "a reasonable probability that, but for counsel's actions, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. at 2068. Moreover, an appellate court may assume deficient performance "if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice." State v. Loza (1994), 71 Ohio St.3d 61, 83. Finally, it is settled that "where a defendant is represented by new counsel on appeal, a claim of ineffective assistance of trial counsel is capable of [direct] review and therefore may be barred under the doctrine of res judicata from being raised in a later postconviction relief petition." Lawson at 316.
Appellant's first claim challenged various decisions by defense counsel in the guilt phase of the trial. Many of the claims of ineffective assistance during the guilt phase of the trial are clearly res judicata. To the extent res judicata may not apply, we address all the issues in the first claim and then the other ineffective assistance claims, seven, eight and nine.
Appellant asserts that trial counsel failed to adequately investigate that Jeff Lynguard, a friend of appellant, may have been involved as the ringleader in a plot to rob and kill the Rays. The trial record shows that in appellant's confession to his friend, James Baker, appellant's statements to Detective James Nugent, and in his trial testimony, appellant never indicated that Jeff Lynguard had any involvement in the deaths of Rays. The custodial statement of Raleigh Randall Smith also confirms that only he and appellant acted to kill the Rays during the robbery. The affidavit of Russell Baker, another friend of appellant, about Jeff Lynguard is speculative, largely hearsay and/or opinion evidence of a lay witness and would not be admissible. Moreover, appellant's assertion that "there is a real possibility that [Jeff Lynguard] may have been a ringleader in this plot" contradicts the trial record and does not meet the threshold standard of cogency. Lawson at 315. Trial counsel reasonably could have decided that any investigation of Jeff Lynguard was a futile exercise.
Appellant asserts that the decision not to question James Baker's competency before Baker testified at trial constituted ineffective assistance. This claim could have been raised on direct appeal and is res judicata. The scope of the cross-examination of Lowell Lainhart, a state witness, about the extent of his friendship with the Rays also could have been raised on direct appeal and is res judicata.
Appellant complains that James Baker testified that appellant told him he "winked" at Raleigh Randall Smith during the commission of the robbery. The wink was apparently a signal for Raleigh Randall Smith to kill Ruth Ray. However, James Baker did not testify to the "wink" in the trial of Raleigh Randall Smith. Appellant argues that the wink evidence was relevant to the "escape detection" death penalty specification. First, this issue could have been raised on direct appeal and is res judicata. Moreover, as noted by trial court, in the trial of Raleigh Randall Smith, James Baker's testimony was hearsay. In appellant's trial, the testimony was found to be admissible as a non-hearsay admission by a party-opponent. See Evid.R. 801(D)(2).
Appellant argues trial counsel failed to investigate the crime scene and sufficiently advocate the argument that he went to the Rays to steal sawzalls, a type of hand tool, from the Rays' back yard. In essence, appellant is arguing that he and his brother did not intend to rob the house and murder the Rays. The prosecution argued these tools were too large to carry from the Rays' home to the getaway car and, therefore, appellant's story was not credible. We find that appellant's evidence dehors the record does not rise to the threshold standard of cogency required. Lawson at 315. Regardless, in light of the overwhelming evidence of appellant's guilt, including his confession to James Baker, statements to the police, the coroner's testimony, and accompanying physical evidence, there is no reasonable probability the outcome of the trial would have been affected. Strickland at 694, 104 S.Ct. 2068.
Appellant argues that the state failed to cross-examine the coroner about the use of a hammer in the killing of Louis Ray. As evidence dehors the record, appellant refers to the coroner's testimony in the Raleigh Randall Smith trial, in which the coroner testified that one of the wounds sustained by Lewis Ray was consistent with having been caused by a hammer, but could not conclusively state that a hammer caused the wound. This testimony is not significantly different from appellant's trial. At appellant's trial, the coroner stated the injury "could have been" done with a hammer. Moreover, the decision not to impeach the coroner with his alleged comments from a local newspaper article was a reasonable trial strategy and, regardless, did not prejudice appellant's trial. Finally, appellant claims that trial counsel failed to cross-examine the coroner about Ruth Ray's heart condition as a factor in the cause of death. This issue could have been raised on direct appeal and is res judicata. In any case, the cross-examination was well within the scope of effective assistance. Strickland at 689, 104 S.Ct. at 2065.
Appellant's seventh claim is that his trial counsel failed to adequately investigate and present mitigating evidence during the penalty phase of the trial. Appellant's ninth claim is that the trial court's failure to grant a continuance in the penalty phase of the trial contributed to trial counsel's ineffectiveness in presenting mitigating evidence. As evidence dehors the record, appellant presented affidavits of psychologists Janice D. Ort and Jeffrey L. Smalldon, and mitigation expert James F. Crates, which criticize trial counsel's presentation of mitigation evidence in the penalty phase of the trial.
We agree with the trial court that this evidence is essentially repackaged information available at trial. Even assuming that res judicata does not apply to this claim, trial counsel presented documentary evidence and expert witnesses pertaining to appellant's psychological condition. Trial counsel also called appellant's wife as a witness in the mitigation stage. Cf. Glenn v. Tate (C.A. 6, 1995), 71 F.3d 1204, certiorari denied (1996), U.S., 117 S.Ct. 273 (defense counsel presented a paucity of mitigation evidence). We cannot now second-guess every aspect of trial counsel's presentation in the penalty phase. Strickland at 689, 104 S.Ct. at 2065.
Similarly, the ninth claim could have been raised on direct appeal and is res judicata. Even assuming the affidavits of the psychologists and mitigation expert constitute material evidence dehors the record, the decision to deny a continuance was within the trial court's discretion.
Appellant's eighth claim is that his trial counsel failed to present a pharmacological expert at trial. Such an expert presumably would have testified about appellant's history of substance abuse and his state of intoxication before and during the commission of the crimes. This claim could have been raised on direct appeal and is res judicata. Even assuming the affidavits of the psychologists and mitigation expert constitute evidence dehors the record, the claim lacks merit. Trial counsel could have reasonably concluded that a pharmacological expert would have been useless in the guilt phase of the trial. The jury was well aware, from appellant's own testimony and closing argument, of the intoxication issue. There is no reasonable probability a pharmacological expert would have made any difference in the guilt phase of the trial.
In the penalty phase, trial counsel could have reasonably concluded that testimony from a pharmacological expert would have been cumulative. The intoxication issue was heavily argued in the mitigation stage. Moreover, when "counsel has presented a meaningful concept of mitigation, the existence of alternative or additional mitigation theories does not establish ineffective assistance." State v. Combs (1994), 100 Ohio App.3d 90, 105. Appellant's claim amounts to second-guessing an arguable trial strategy and does not meet the threshold standard of cogency. See Lawson at 315; Strickland at 689, 104 S.Ct. at 2065. Having found all the ineffective assistance claims without merit, we address the remainder of appellant's postconviction relief claims.
Appellant's second claim relates to prosecutorial misconduct in the presentation of evidence. Many of appellant's claims of alleged prosecutorial misconduct are res judicata. See Smith,80 Ohio St.3d at 110-112. To the extent res judicata is not warranted, appellant has failed to demonstrate prosecutorial misconduct by the introduction of any material false or misleading testimony. The prosecutor "has latitude as to what the evidence has shown and what inferences can reasonably be drawn from the evidence." Smith, 80 Ohio St.3d at 111. We fail to see any inappropriate conduct by the prosecutor that "affected the fairness of the trial." Id.
Appellant's third claim is that the trial court erred by allowing the state to introduce irrelevant evidence of the victim's good character and denying appellant the right to introduce evidence of the victim's bad character. This argument was rejected by the Supreme Court of Ohio upon direct review. Smith at 106-07. We agree with the state of Ohio that appellant's new evidence is merely cumulative to that already fully considered upon direct review and is, therefore, res judicata. In any event, for the reasons outlined by the Supreme Court of Ohio, the claim lacks merit. See id. We also find that appellant's fourth claim, that the prosecution mischaracterized evidence of Lewis Ray's character, could have been raised on direct appeal and is res judicata.
In the tenth claim of the postconviction relief petition, appellant argues that R.C. 2929.05 is unconstitutional per se. The statute provides that the Supreme Court of Ohio is to consider upon appellate review (1) whether the sentence of death was "excessive or disproportionate to the penalty imposed in similar cases" and (2) "whether the sentencing court properly weighed the aggravating circumstances the offender was guilty of committing and the mitigating factors." Id. This claim could have been raised on direct appeal and is res judicata. In addition, appellant argues this court should consider the life sentence of Raleigh Randall Smith. This claim was squarely addressed on direct appeal and is res judicata. Smith at 118 ("We continue to adhere to the statement * * * that `[t]he proportionality review required by R.C. 2929.05(A) is satisfied by a review of those cases already decided by the reviewing court in which the death penalty has been imposed.'").
In the fifth claim of the petition, appellant argues that his confession was (1) involuntary, (2) made without a valid Miranda waiver, and (3) unrecorded, and therefore lacked probative value. These arguments were addressed on direct appeal and are res judicata. See Smith at 105-06. In any event, the evidence dehors the record of appellant's consumption of drugs and/or alcohol is selfserving and fails to meet the threshold standard of cogency. Lawson at 315.
In the sixth claim of the petition, appellant avers prosecutorial misconduct because the prosecutor mischaracterized evidence regarding appellant's drug and/or alcohol intoxication during the time the crimes were committed, his subsequent arrest, and confession. This claim could have been raised on direct appeal and is res judicata.
In his eleventh claim for postconviction relief, appellant asserts that electrocution as a means of capital punishment is cruel and unusual punishment under the Eighth Amendment of the United States Constitution. This claim could have been raised on direct appeal and is res judicata. Also, for the reasons given by the trial court, we find the claim without merit.
In summary, after reviewing all eleven claims for relief, we find that none of them warrant an evidentiary hearing. Accordingly, the second assignment of error is overruled.
In the third assignment of error, appellant alleges that the trial court erred by denying appellant's discovery requests. This argument is not well-taken. A petitioner for postconviction relief has no right to discovery until it is determined an evidentiary hearing is warranted. See State v. Smith (1986),30 Ohio App.3d 138, 140, certiorari denied, 479 U.S. 860,107 S.Ct. 208. Appellant cites Bracy v. Gramley (1997), 520 U.S. 899,117 S.Ct. 1793. The Court in Bracy merely applied federal Habeas Corpus Rule 6(a), and the decision clearly was not based on federal constitutional law. Therefore, the third assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.
[1] The death penalty specifications were that the offense was committed for the purpose of escaping detection, apprehension, trial or punishment for another offense, R.C. 2929.04(A)(3); that the offense was part of a course of conduct involving the purposeful killing of two or more persons, R.C. 2929.04(A)(5); and that the offense was committed in the commission of aggravated robbery, R.C. 2929.04(A)(7).
[2] This case was the first death penalty case under the 1994 amendments to the Ohio Constitution. The amendments eliminated intermediate appellate review of death penalty cases and provided for appeal to the Supreme Court of Ohio as a matter of right. Sections 2(B)(2) 3(B)(2), Article IV, Ohio Constitution. See, also, Smith, 80 Ohio St.3d at 96-97. The legislature amended R.C.2953.02 to put these amendments into effect. Despite these changes, appellant appealed to this court. We dismissed the appeal for lack of jurisdiction. State v. Smith (Mar. 19, 1996), Butler App. No. CA96-02-024, unreported. The Supreme Court of Ohio affirmed our ruling and held that the amendments and parallel provisions of R.C. 2953.02 did not violate the United States Constitution. Id. at 97-104.